ORIGINAL

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
————————————————————————X

LOU-ANN ELIAS,

                                        *Plaintiff*

              - against -

State of NEW YORK; NYS Commission Of Correction; City
Of New York; Michael BLOOMBERG individually and in his
capacity of Mayor of the City of New York; New York City
Department Of Health & Mental Hygiene; Police Department
City Of New York; Raymond Kelly as Police Commissioner of
the City of New York and as Chair of the Board of Trustees
Police Pension Fund of the City of New York; Members of the
Board Of Trustees of said fund; Deputy Inspector Jeffrey
MADDREY individually and in capacity of Commanding
Officer of 73ʳᵈ Pct.; LT Kathleen CAESAR individually and in
capacity of Platoon Commander at 73ʳᵈ Pct.; Lt.
MAGOOLAHAN individually and in capacity of Platoon
Commander at 73ʳᵈ Pct.; Patrolmen's Benevolent Association;
New York City Department Of Homeless; New York City
Department Of Citywide Administrative Services; Brooklyn
Supreme Court; Brooklyn Family Court; Worth, Longworth &
London, LLP (WLL); Craig HAYES individually and in
capacity of Attorney at WLL; Brookdale Hospital Medical
Center; City Of New York Commission On Human Rights;
Sheetal KALE individually and in capacity of Staff Attorney at
the City of New York Commission on Human Rights; and
Adam APRIGLIANO individually and in capacity of Staff
Attorney at the City of New York Commission on Human
Rights, NYC Health and Hospitals Corporation,

                                        *Defendants.*
————————————————————————X

**COMPLAINT**
**JURY DEMANDED**

CV 11 - 5708

TOWNES, J.
BLOOM, M.J.

RECEIVED
NOV 18 2011
PRO SE OFFICE

Plaintiff, complaining of the Defendants, avers:

" *It is idle to say that a citizen shall have the right to pursue life,*
*liberty and happiness, yet deny him the right to labor,*
*whereby alone he can live.*
*It is a mockery to say the least that a citizen may have a right to live,*
*and yet deny him the right to make a contract to secure the privilege and the rewards of labor.*" ⁱ

### FIRST CLAIM FOR RELIEF

### JURISDICTION AND VENUE

1)     This is a civil action alleging a systematic policy and practice of unlawful discriminatory
employment practice; ongoing discriminatory harassment; defamation of character; hostile work-environment;
disparate treatment; adverse change in the terms & conditions of employment; retaliation; wrongful

termination; unnecessary hospitalization; false imprisonment and finally, "failure to (re)hire." These acts are believed to have been motivated by class-based discriminatory animus against Plaintiff because of her sex / status as a victim of domestic violence, her race, and her religious beliefs as a black Sabbath-observer; accomplished by the coordinated efforts of city employees and their agents, nero-linguistic programming (NLP), the phenomenon of black-listing, *mobbing*, covert acts and other unlawful means. Plaintiff seeks damages against defendant, NYPD and its extensive host of co-conspirators and mutual agents (all other Defendants) for committing these discriminatory and retaliatory acts, that deprived or attempted to interfere with and violate constitutional and civil rights secured under the *First, Fifth, Thirteenth* and *Fourteenth Amendments to the USC, 42 U.S.C. § 1981, § 1983, § 1985* and *§ 1986.* Plaintiff believes that conspiratorial efforts of defendants were performed for the purpose of hindering and denying her equal protection and privilege of laws in an attempt to deny her her inalienable right "to labor"; and refusing or neglecting to prevent such deprivations and denials to her constitutional rights.

2)      This complaint asserts a claim under the *New York State Constitution, Local Civil Rights Restoration Act of 2005, § 2201 et seq., Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq.* (herein-after called "*Title VII*"), *NY State Human Rights Law, N.Y. Exec. Law § 296 et seq.* (herein-after called *Exec Law*), the *NYC Human Rights Law, NYC Admin Code §§ 8 et seq.* (herein-after called *Admin Code*), *N.Y. Civ. Rights Law § 40-c*, and *29 USCS § 159* declaring and adjudging discriminatory employment practices, retaliation, conspiracy to prevent due process and violations of civil and constitutional rights. Plaintiff also seeks a remedy for Defendants' intentional infliction of emotional distress and breach of contract by Plaintiff's employer, the City of New York.

3)      At all times relevant to this complaint, Defendants acted under color and pretense of law, to wit: under color of the statutes, ordinances, regulations, customs and usages of the City and State of New York.

4)      At all times relevant to this complaint, Defendants engaged in the illegal conduct herein mentioned to the injury of Plaintiff depriving her of her rights, privileges and immunities secured by the *Fourteenth Amendment* to the Constitution of the United States and the laws of the United States and the State of New York.

5)      This court has subject matter jurisdiction of this action under *42 USCS §§ 2000e-5(f)(3), 29 USCS 151 et. Seq., 28 U.S.C. §§ 1331, 1337, 1343, 42 U.S.C. § § 2201 et seq., 2000e-5 (f), (e); 42 USCS § 1981, § 1983, § 1985;* and *§ 1986.*

6)      Venue lies in this District pursuant to *28 USC § 1391(b)*, because the events and occurrences giving rise to this action occurred within this judicial district.

**PARTIES**

**PLAINTIFF**

7)      Plaintiff, Lou-Ann Elias ("Plaintiff"), is an African-American, female citizen of the United States of America and at all times material to the averments of this complaint, was a resident of Kings County. Plaintiff is a Seventh-Day Adventist who has believed in and practiced Sabbath observance (abstinence from secular activities from sunset on Friday to sunset on Saturday) for most of her life". Plaintiff is ex-employee of the NYPD who was duly appointed as a Police Officer (PO) with the NYPD on July 22nd, 2002 from the competitive eligible list for that position and upon graduation Plaintiff was assigned to the 73[rd] Precinct, AKA "the Alamo." Though no physical line was "drawn in the sand," Plaintiff was soon to realize that one did indeed exist and she was to be made to choose sides. Plaintiff performed her duties responsibly and satisfactorily except for two unlawful suspensions. The first suspension incident occurred after Plaintiff's involvement in a violent domestic incident. The second occurred, in retaliation for her initiating complaints asserting employment discrimination in violation of *Title VII* and other state and federal laws." Plaintiff completed 6 ½ years of exemplary service with the NYPD before being terminated on January 6th, 2009.

8)    Plaintiff was also unlawfully and involuntarily hospitalized in retaliation for filing these claims in the psychiatric wards of Coney Island Hospital (CIH) and Kings County Hospital (KCH). Plaintiff and her then, 5-year-old son, were evicted, became homeless and had the entire contents of her apartment given over to her mother, who is employed "unofficially" as part of the City's smear campaign and officially receives subsidy from the state and city of New York for the daycare and group home that she operates out of her two-family home. Plaintiff's mother has in various ways informed her that she was responsible for "taking care of the City's problem; *i.e. Plaintiff*" Plaintiff's mother had previously encountered similar problems with her then employer, Defendant Brookdale Hospital (BHMC), who similarly discriminated against her for also requesting sabbath-accommodation. Plaintiff's mother likewise filed claim with the Commission, who ultimately determined that BMHC did engage in discriminatory conduct motivated by religious bias and hence enjoined BHMC to implement a policy of mandatory sabbath accommodation for those employees who henceforth requested such.

9)    While unnecessarily hospitalized at CIH, Plaintiff lost custody of her son at the order of defendant, Judge Hon. Robin K. Sheares, of BFC on January 23rd, 2009. After enduring much intimidation and harassment Plaintiff challenged decision and this decision is still being deliberated.

## DEFENDANTS

10)    The defendants, each of whom is being sued individually and in their official capacities, are:

11)    Defendant New York City ("City") was Plaintiff's employer through the agency of the NYPD. The City of NY is a municipal corporation duly organized under the laws of the state of NY. Defendant is a body corporate and political subdivision of the State of New York, established pursuant to the laws of the State of New York. Defendant is a "person" as defined by the *Admin Code § 8-102 (1), Title VII 42 U.S.C. § 2000e (a)* and *Exec. Law § 292 (5).* Defendant is an "employer" as defined by *Title VII 42 U.S.C. § 2000e (b)* and *Exec. Law § 292 (5).* It employs more than the requisite number of persons for the requisite duration under statute.

12)    Defendant Mayor Michael Bloomberg ("Mayor Bloomberg") was and still is the Mayor of NYC. His unlawful action or inaction in his capacity as final decision-maker pursuant to authority granted to him by the City of N.Y. can therefore represent official municipal policy and practice. He is superior to all other Defendants herein mentioned. Defendant is person as defined by *Title VII Sec. 2000e (a), NYSHRL* and *NYCHRL § 8-102 (1).*

13)    Defendant, Police Commissioner Raymond Kelly ("PC Kelly"), was and still is the Police Commissioner of the NYPD. His unlawful action or inaction in his capacity as final decision-maker pursuant to authority granted to him by the NYPD and City of NY can therefore represent official municipal policy and practice. He is the Chair of the Board of Trustees Police Pension Fund. This defendant has ultimate authority over and is superior to Defendant, Deputy Inspector Maddrey. PC Kelly is person as defined by *Title VII Sec. 2000e (a), NYSHRL* and *NYCHRL § 8-102 (1).*

14)    Defendant Deputy Inspector Maddrey ("DI Maddrey"), was employed by Defendant City with Defendant NYPD as the Commanding Officer of the 73rd Precinct, where Plaintiff was permanently assigned. His action / inaction in his capacity as one of the final decision-makers at the 73 Pct. level, pursuant to authority granted to him by the NYPD can be representative of official municipal policy and practice. He was superior to Defendants, Lt. Caesar, Lt. Magoolahan, Sgt Wassinger and all other Members of Service ("MOS") mentioned herein of the 73rd Pct. Defendant is person as defined by *Title VII Sec. 2000e (a), NYSHRL* and *NYCHRL § 8-102 (1).* He is sued individually and in his official capacity as Commanding officer of the 73rd Pct.

15)    Defendant Lt Caesar was employed by Defendant City with Defendant NYPD and assigned to the 73rd Pct, and Plaintiff's Platoon Commander during period May 2006 to March 2007. She was the superior MOS on the first platoon at the time. She was responsible for denying and approving all time-off and has final

say in all assignments on this platoon. Defendant is a "person" as defined by *Title VII Sec. 2000e (a), Exec Law* and *Admin Code § 8-102 (1)*. She is being sued both individually and in her official capacity as Lieutenant at the 73rd Pct.

16) Defendant Lt Magoolahan was Plaintiff's Platoon Commander and employee of Defendant City with Defendant NYPD and assigned to the 73rd Pct. He was the superior MOS on the second platoon (7am - 3:35pm tour) at the time, as well as Plaintiff's Platoon Commander from March 2007 to October 2007. He was responsible for denying and approving all time-off and had final say in all assignments on this platoon. Defendant is a "person" as defined by *Title VII Sec. 2000e (a), NYSHRL* and *NYCHRL § 8-102 (1)*. He is being sued both individually and in his official capacity as Lieutenant at the 73rd Pct. of NYPD.

17) Defendant, Patrolmen's Benevolent Association ("PBA") was Plaintiff's union while employed as a police Officer. Defendant is a "labor organization" as defined by *N.Y. Civil Rights Law § 43, Title VII Sec 2000e (d), Admin Code § 8-102 (3)* and *Exec Law 292 (3)*.

18) Defendant Worth, Longworth & London, LLP ("WLL)," was the firm selected by Plaintiff's Union, Defendant PBA, to represent her on both suspension incidents. Defendant, WLL is a "person" as defined by *Title VII Sec 2000e (a)* and *NYCHRL § 8-102 (1)*.

19) Defendant, Craig Hayes is employed by Defendant "Worth, Longworth & London, LLP (WLL)," the firm selected by Plaintiff's Union, Defendant PBA, to represent her on both suspension incidents. Defendants, WLL and Craig Hayes are "persons" as defined by *Title VII Sec 2000e (a)* and *NYCHRL § 8-102 (1)*. Defendant, PBA is a "labor organization" as defined by *N.Y. Civil Rights Law § 43, Title VII Sec 2000e (d), Admin Code § 8-102 (3)* and *Exec Law 292 (3)*. Hayes is being sued both individually and in his official capacity as an attorney at WLL.

20) Defendant, Brookdale Hospital Medical Center is a place of public accommodation within the meaning of the statute of the *N.Y. Human Right Law*. They entered into contractual agreements with the (i)"patient(s) / suspect(s) / victim(s)" that Plaintiff was assigned to guard, and (ii) her employer, the NYPD. Also, similar contractual agreement existed between Defendant, Brookdale Hospital Medical Center and (ii) Defendant, City of NY through the agency of the NYPD. Therefore, Plaintiff claims religious discrimination, and bias related acts pursuant to "right-to-contract" provisions of *42 USCS § 1981* and place of "public accommodation" provisions of the *NYC Human Rights Law*. Defendant is considered a "person" as defined by *Title VII Sec. 2000e (a), Exec Law § 292 (1)* and *Admin Code § 8-102 (1)*.

21) Defendant, New York City Commission on Human Rights ("Commission") is a governmental agency created with power to eliminate and prevent employment, public accommodations and housing and other real estate, and to take other actions against prejudice, intolerance, bigotry, discrimination and bias-related violence or harassment. Defendant is a "person" as defined by *Title VII Sec. 2000e (a), Exec Law § 292 (1)* and *Admin Code § 8-102 (1)*.

22) Defendant, Adam Aprigliano is employed by Defendant, the City, at the Commission. Defendant is considered a "person" as defined by *Title VII Sec. 2000e (a), Exec Law § 292 (1)* and *Admin Code § 8-102 (1)*. He is being sued both individually and his official capacity as an attorney at the Commission.

23) Defendant Sheetal Kale is employed by the City of NY at the Commission. Plaintiff visited the office, to file a claim of employment discrimination where both Defendants and the Receptionist attempted to intimidate and discourage her from filing claim. Defendant is a "person" as defined by *Title VII Sec. 2000e (a), Exec Law § 292 (1)* and *Admin Code § 8-102 (1)*. She is being sued both individually and her official capacity as an attorney at the Commission.

24) Defendant Department of Citywide Administrative Services ("DCAS") is the governmental administrative agency of the City of New York whose personnel supervise the preparation and administration of examinations for the NYPD under the direction of the Personnel Director. Defendant, DCAS is an "employment agency" as defined by *Title VII 42 U.S.C. § 2000e (c), Exec. Law § 292 (2)* and *Admin Code §*

8-102(2).  Defendant is a "person" as defined by the *Admin Code § 8-102 (1), Title VII 42 U.S.C. § 2000e (a)* and *Exec. Law § 292 (1)*.

25)    Defendant, New York City Department of Homeless ("DHS") is the administrative agency of the City of New York whose personnel supervise the ministration of homeless individuals and families within the NYC homeless system.  Defendant, DHS is a "person" as defined by *Title VII 42 U.S.C. § 2000e (a), Exec. Law § 292 (1)* and *Admin Code § 8-102(1)*.

26)    Defendant New York City Health and Hospitals Corporation ("HHC") operates the municipal hospital system and clinics in New York City. HHC is the largest urban healthcare agency in the US. HHC was created in 1969 by the New York State Legislature as a public benefit corporation (Chapter 1016 of the Laws 1969).  Defendant is a "person" as defined by the *Admin Code § 8-102 (1), Title VII 42 U.S.C. § 2000e (a)* and *Exec. Law § 292 (1)*.

27)    Defendant Kings County Hospital Center ("KCH") is a hospital in NYC that operates in King's county and is operated by HHC.  Defendant is a "person" as defined by the *Admin Code § 8-102 (1), Title VII 42 U.S.C. § 2000e (a)* and *Exec. Law § 292 (1)*.

28)    Defendant Marla Shapiro ("Shapiro") is a psychiatrist at KCH.  Defendant is a "person" as defined by the *Admin Code § 8-102 (1), Title VII 42 U.S.C. § 2000e (a)* and *Exec. Law § 292 (1)*.

29)    Defendant Coney Island Hospital ("CIH") is a hospital in NYC that operates in King's county and is operated by HHC.  Defendant is a "person" as defined by the *Admin Code § 8-102 (1), Title VII 42 U.S.C. § 2000e (a)* and *Exec. Law § 292 (1)*.

30)    Defendant Dr Julia' Pavlov ("Pavlov") is a psychiatrist at City Hospital, Defendant CIH. Defendant is a "person" as defined by *Title VII Sec. 2000e (a), Exec. Law § 292 (1)* and *Admin Code § 8-102 (1)*.  She is being sued in her official capacity as a psychiatrist at CIH

31)    Defendant Dr Dewitt" Elverson (Elverson) Defendants are "persons," as defined by *Title VII Sec. 2000e (a), Exec. Law § 292 (1)* and *Admin Code § 8-102 (1)*.  Defendant is sued in his official capacity as psychiatrist at CIH.

32)    Defendant New York City Department of Health and Mental Hygiene ("DHMH"), Division of Mental Hygiene (Division or DMH), under the City Charter and in accordance with State Mental Hygiene Law, is responsible for administering, planning, contracting, monitoring, and evaluating the mental well-being of individuals in the areas of: chemical dependency, early intervention, mental health, and mental retardation and developmental disabilities. Defendant is a "person" as defined by the *Admin Code § 8-102 (1), Title VII 42 U.S.C. § 2000e (a)* and *Exec. Law § 292 (2)*.

33)    Defendant, Brookdale Hospital Medical Center is a place of public accommodation within the meaning of the statute of the N.Y. Human Right Law.  Defendants did enter into contractual agreements with the (i)"patient(s) / suspect(s) / victim(s)" that Plaintiff was often assigned to guard, and (ii)the City through the agency of the NYPD.  As such Defendant acted as Defendant City's and Defendant NYPD's "agent." Therefore, Plaintiff claims religious discrimination, and bias related acts pursuant to place of "public accommodation" provisions of the *Exec Law § 296 (2)* and *Admin Code § 8-102 (9)*. Defendant is a "person" as defined by the *Admin Code § 8-102 (1)* and *Exec Law § 292 (1)*.

34)    Defendant Social Security Administration ("SSA").  SSA is a government agency created with power to determine need for disability benefits.  Defendant is a "person" as defined by the *Admin Code § 8-102 (1), Title VII 42 U.S.C. § 2000e (a)* and *Exec. Law § 292 (2)*.

## ADMINISTRATIVE PROCEDURES

35)    Plaintiff timely filed a charge of discrimination against Defendants with the New York district

office of the Equal Employment Opportunity Commission ("EEOC") on November 18th, 2011.

36) Although the agency has not yet rendered a decision, Plaintiff is unable to wait for a response from office with regard to complaint because the statute of limitations for the acts herein alleged will be time-barred. Plaintiff has however complied with the statutory prerequisites for maintaining this civil action as set forth in *Title VII,* and the regulations issued thereunder.

## VIOLATIONS ALLEGED

### SERIAL ACTS / SYSTEMIC VIOLATIONS

37) Defendant NYPD, and its' extensive host of co-conspirators, some of whom were Plaintiff's co-workers and bosses, discriminated, conspired and retaliated against her. This is evidenced in her being treated with bias and disparity. Plaintiff avers to being extensively and relentlessly harassed because of her status as a victim of domestic violence, her religious beliefs and race with regard to the terms and conditions of her employment, in violation of the *New York State Constitution, N.Y. Civ. Rights Law § 40-c (2), Admin Code §§ 8 et seq., Title VII of the Civil Rights Act of 1964,* as amended, *42 USC 2000 et seq.,* and *Exec Law § 296* comparative to other similarly situated co-workers in title, rank and seniority in the following regards:

a) Cuffs and other uniform items would frequently be missing from Plaintiff's locked locker.

b) Gross deviations from Defendant's policies and procedures.

c) Yelled at by supervisors

d) Significantly diminished material responsibilities

e) Constantly picked on in front of fellow officers

f) Job performance sabotaged by supervisors

g) Deliberately ignored by supervisors and coworkers causing Plaintiff to be constantly "out of the loop."

h) Repeated comments about Plaintiff believing herself to be "special" because she had a fixed schedule allowing her sabbaths "off."

i) Repeated jokes about "weed" / drug usage

j) Consistently given radios / autos that did not work or were defective.

k) Repeatedly placed in dangerous positions and assignments, such as at the front desk while assigned to Brooklyn North Ant-Crime Unit where she worked as the "security guard" with no firearm during the first platoon (midnight shift); many times alone. This non-compliance with Patrol Guide procedures frequently created very unsafe conditions.

l) Heating and ventilation at the facility was substandard. Portable heaters were necessary to stay warm at night.

m) Given inferior status.

n) Repeatedly assigned to tasks that were, for the most part, menial and non-typical of police officer duties. In so doing, defendants adversely affected Plaintiff's chances of advancing in her career or of "learning the job." This is of particular interest when one considers that much of a PO's job requires "hands-on" experience which in Plaintiff's case was severely, and apparently deliberately, limited.

o) Vandalism to personal property and personal vehicle on three occasions.

p) Failing to train Plaintiff for assignments on the same terms as other co-workers.

q)   Transmission of questionable radio runs that were clearly imitative of Plaintiff's personal life or family circumstance. Some gave clear indication that Plaintiff was to shortly:

   i.   Be evicted / made homeless

   ii.  Lose custody of her son

r)   Placement of Plaintiff on excessive amounts of unusual and questionable assignments; including but not limited to Emotionally Disturbed Person (EDP) assignments; many of these victims were reported to be "religious fanatics." Plaintiff was shortly to be made to understand what these assignments were alluding to.

s)   Placement of Plaintiff on modified assignment and suspending her in retaliation for filing an *Article 78* and for her initiating a complaints asserting employment discrimination in violation of *Title VII* at the USC SDNY.

t)   Problems with personal cell phone.

u)   Threatening and harassing text messages from co-workers P.O. Austin, P.O Jemmot and P.O. Silverman.

v)   Problems with personal mail delivery and receipt of unsolicited mail; many of which were addressed to her ex-husband who did not know Plaintiff's new address.

w)   On one occasion, shortly after being restored to full duty status, Plaintiff's then partner, PO Herbert, asked her if she wanted to "see something?"  He then drove into the precinct parking lot and showed her the license plate on his car which said "SAMAURI." He then burst out laughing and then drove out of the parking lot.  Plaintiff did not understand how he knew that she had been assaulted with a sword or even a *samauri* sword for that matter, as she had not ever discussed the details of domestic violence situation.  These details were however revealed only to Plaintiff union delegate, PO Silverman and the MOS who conducted the "investigation," Lt Farrell and Sgt Dibrizzi. All of the acts of above MOS were done to punish Plaintiff herein because of her status as a survivor of domestic violence who has religious beliefs that include sabbath observance.

x)   On another occasion, one of Plaintiff's co-workers, PO Kenner, offered to assist her with the entry of her information into the department computers for an arrest that she was processing.  This officer "mistakenly" entered Plaintiff's name as the "perp" in field for the perpetrator's name.  This information could not be altered and remains on Plaintiff's department arrest activity record.  When Plaintiff was later "arrested" by NYS sheriffs she realized why this same officer would say to her "you shouldn't bite the hand that feeds you!" This comment being made in reference to Plaintiff's complaint to the Commission and the EEOC.

## SECOND CLAIM FOR RELIEF

### DEFENDANTS: CITY, DI MADDREY, LT CAESAR, SGT WASSINGER

### 1ˢᵀ UNLAWFUL SUSPENSION & PLACEMENT ON MODIFIED STATUS

#### *Violation of 42 USCS § 1983: Right to Be Free From Sex-Based Harassment*

38.   Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 37 of this complaint.

39.   Employers violate *Title VII* when they treat battered women differently than similarly situated male employees on account of gender."

40.     On July 8th, 2005 Plaintiff was involved in a domestic incident for which she was hospitalized. Shortly thereafter Plaintiff requested and obtained an "*Order of Protection*" against her ex-husband who had been imprisoned for 10 days for the crime. She was later suspended for 40 days, in violation of CLS *Civ S §  75(3)*. Plaintiff believes that the NYPD's decision to suspend her was motivated by federally impermissible reasons and because the department perceived her status as a "domestic violence victim" to be an "embarrassment" and "safety risk" and hence committed in violation of *Executive Law § 296, 1(a)* and *Title VII*. Plaintiff considers this to be a form of sex-based harassment and hence committed in violation of *N.Y.C. Admin. Code §8-107.1 (2001)*.

41.     As additional evidence of sex-harassment were the varied and numerous remarks and comments of Plaintiff's male co-workers and one boss who made it clear to her that her now "single" status made it possible for her to "play the game" and that her inability to do so would have dire consequences. Upon Plaintiff's repeated and consistent decline of her co-workers' offers to "accelerate" her restoration to "full-duty" status her auto was given a flat tire, one morning she noticed foot prints on the hood of her auto that had be parked in front of the annex all night.

42.     Plaintiff's request for Sabbath-accommodation request was substantially delayed and she was repeatedly "blocked" on the sign-in log.

43.     Plaintiff was suspended without pay.

44.     In attempt to humiliate and intimidate Plaintiff, photos of her injuries made up much of the NYPD's "defense," along with other personal information which was made public information when department filed their *Article 78 Answer*.

45.     On August 18th, 2005 Plaintiff was reinstated on modified status and transferred to Brooklyn North Anti-Crime Unit (BNACU). Though Plaintiff requested and it is standard procedure to enroll employees involved in domestic incidents in domestic violence classes, usually within one month of the incident or of being re-instated (if suspended), Plaintiff was only scheduled to attend such classes in May 2006.

46.     Plaintiff was placed on night duty in violation of department procedure and *29 USC §651 (1988* & Supp. V *1993)*." This is evidence that the NYPD did not *truly* believe that Plaintiff was on disciplinary status. Instead, Plaintiff soon realized that the department placed her at this location to make her the "target" of all sorts of unmentionable behaviors and pranks. Plaintiff's main task at this location was to clean the bathroom and take out the trash.

47.     On one Saturday, shortly after requesting sabbath accommodation for the second time, Plaintiff's relief, PO Flannery, never came in and in spite of call to supervisor she was forced to remain at work for an additional tour. This was very unsafe since Plaintiff was alone in the facility, had come in since 2200hrs the previous night and made to stay till 1435hrs of the next day, when her relief arrived. Since Plaintiff's recent circumstances had caused her to become a single-mother this was very inconveniencing. This incident seemed even less coincidental when the officer that eventually relieved her, PO Cruz, engaged Plaintiff into a long fanciful account of her "ex" one time "beating her and holding her hostage for an extended period before she was finally allowed to leave." Many details of her account seemed very similar to Plaintiff's own recent situation. This account also bore very strong similitude to a text message that Plaintiff received from her a future partner, PO Jemmot. Every officer at the ACU seemed to always have an unsolicited account which they wanted to *share* in Plaintiff's hearing about an incident of domestic violence.

48.     On August 7th, 2006, Plaintiff's department auto was struck by a civilian auto. Plaintiff was authorized for only 1 sick-day leave. Plaintiff had up to that time and till being terminated from the department an unblemished sick record but on this occasion one-day was wholly insufficient and inconsiderate considering other officers were given authorization for "time off" in excess of a week for complaints as simple as the common cold or flu.

49.     Plaintiff very frequently encountered "blocking" when she attempted putting over radio transmissions. This is the phenomenon of another unit depressing the signal button on their radio at the same

time another unit is attempting to transmit a signal. This would prevent the latter from being able to transmit their message; no matter how urgent. This could potentially cause a safety risk especially considering the nature and location of Plaintiff's employment. One such occasion was on August 11", 2006 when she was assigned to sector 73G. Plaintiff repeatedly attempted throughout the night to transmit message but was disregarded. Doubting that this difficulty was as a result of defect in the mechanics of her radio, Plaintiff deliberately sought verification of a transmission to the switchboard as another unit, 75G. Not surprisingly, this transmission was successful.

50.     The conduct of above MOS was done under color of State law, and pursuant to the official policy, custom, or practice endorsed and approved by of the City of New York.

51.     Above acts were therefore unlawful and illegal, and constitute a denial of a clear legal right owed to the Plaintiff and was beyond their lawful authority.

52.     *42 U.S.C. § 2000e (2) et seq.*, prohibits discrimination employers based on sex.

53.     By failing to take affirmative action to correct the unlawful practices alleged herein Defendants' said actions violated *42 U.S.C.S. § 1983, § 1985* and suit is therefore brought pursuant to *§1986*.

54.     Plaintiff was damaged and injured by the Defendants' said conduct, policy and custom as follows:

    a.   Change of chart from "patrol" to "administrative" due to modified duty status

    b.   Unusual behavior of co-workers and supervisors created an uncomfortable / hostile work environment. Shortly after making complaints with the EEOC and the Commission one co-worker, PO Kenner, said to her "you can't bite the hand that feeds you!" It was unclear how he knew of her complaint.

    c.   No response on the above matters though most were reported to IAB, to Plaintiff's supervisors and union representatives.

    d.   Defendants used their extensive resources and network to harass Plaintiff including but not limited to other agencies and her landlord.

    e.   Defamation of character.

    f.   Ruined credit.

    g.   Inaccurate performance evaluations.

    h.   As a result of the foregoing acts committed against Plaintiff by Defendants, Plaintiff sustained injury to her reputation, humiliation and embarrassment.

55.     Defendants acted independently and in concert without authorization of law, willfully, knowingly and purposely, with the specific intent of depriving Plaintiff of her *First Amendment* rights.

56.     The acts of the Defendants were unlawful.

57.     Defendants did, in fact, deny the Plaintiff her *First Amendment* rights as those rights are secured to Plaintiff by the provisions of the due process clause of the *Fourteenth Amendment* to the Constitution of the United States and by *42 U.S.C. § 1983* and the statutes and laws of the State of New York.

58.     As a result of the foregoing acts committed against Plaintiff by Defendants, Plaintiff sustained injury to her reputation, humiliation and embarrassment.

59.     Plaintiff claims attorney's fees and expenses of the Defendants pursuant to *42 U.S.C.S. § 1988* and *42 U.S.C.S. § 1988*.

60.     Because of the willful, gross and oppressive conduct of the Defendants, Plaintiff claims punitive damages of the Defendants.

61.    Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff demand judgment against defendants as follows:

a.    Judgment awarding to Plaintiff injunctive, compensatory and punitive damages and the costs of this action;

b.    Judgment awarding to Plaintiff her attorneys' fees; and

c.    Judgment awarding such other relief as the Court may deem just and proper.

## THIRD CLAIM FOR RELIEF

### ALL DEFENDANTS

#### Violation of 42 U.S.C. § 1983: Fifth & Fourteenth Amendment: Due Process Rights

62.    Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 61 of this complaint.

63.    Plaintiff's first suspension that occurred on July 10th, 2005 was unlawful and in violation of *NYC, N.Y., Admin. Code § 14-123* since there was an unreasonable delay of the service of the charges which were received on February 26th, 2006.    Plaintiff contacted union attorney, Hayes, and in spite of his many objections, requested a department hearing which was conducted on August 25th, 2006. Additionally, there was an extensive delay of seven months between administrative hearing and the police commissioner's decision imposing penalty, which exceeded the collective bargaining agreement of a 60-day time limitation and was therefore another violation of departmental procedure.

64.    Plaintiff pleaded "Not guilty" to the Charges and a departmental trial with respect to these charges was conducted on August 25th, 2006 before Assistant Deputy Commissioner (ADC) of Trials, John Grappone. Plaintiff was represented by Hayes. At its' conclusion, the hearing officer reserved decision.

65.    Soon thereafter, Plaintiff experienced the following marked increase in the number of solo-post out-of-precinct assignments:

a.    Out-of-Precinct assignments (including housing location) prior to the Department Hearing:

2006

| | | |
|---|---|---|
| i. | July: | 0 |
| ii. | August: | 0 |

b.    Out-of-Precinct assignments (including housing location) the month of Department Hearing:

| | | |
|---|---|---|
| iii. | September: | 1 |

b.    Out-of-Precinct (including housing location) assignments subsequent to the Department Hearing:

| | | |
|---|---|---|
| i. | October: | 2 |
| ii. | November: | 7 |
| iii. | December: | 8(8) |

2007

| | | |
|---|---|---|
| iv. | January: | 8 |
| v. | February: | 1 |

| vi. | March: | 7(10) |
| vii. | April: | 13(14) |
| viii. | May: | 18 |
| ix. | June: | 7 |
| x. | July: | 3 |
| xi. | August: | 4 |
| xii. | September: | 14 |

66. On December 21ˢᵗ, 2006, ADC Grappone found Plaintiff Guilty of Specification No. 1 and Not Guilty of Specification No. 2 and recommended that Plaintiff forfeit 20 of the pre-trial suspension days and that the 20 additional pre-suspension days be restored. Plaintiff was found guilty of certain lone specification in regard to Disciplinary Case No. 81156 / 05, and was assessed a penalty of forfeiture of 40 pre-suspension days, based upon the findings made by a hearing officer at a disciplinary hearing.

67. Finding was not made against the weight of the evidence presented at hearing.

68. On March 20th, 2007, PC Kelly did unlawfully adopt the determination of the trial judge, ADC Garappone, but disproved of the recommended penalty and upheld the pre-hearing suspension 40-day penalty. Since this determination was made in the absence of *any* evidence or witness testimony, Plaintiff believes it was made because of her status as a victim of domestic violence and hence in violation of *Admin. Code § 8-107(2) & (7)* and *Exec Law § 296 1(a)*.

69. Plaintiff received notification of finding in April 2007.

70. On July 31ˢᵗ, 2007, Plaintiff (*pro se*), timely commenced an *Article 78* pursuant to *N.Y. CPLR* in which the lawfulness and sufficiency of the evidence adduced at the administrative hearing was challenged regarding her first suspension for the following reasons:

a. The constitutional right to due process requires a hearing *prior* to even a temporary suspension of a public employee unless some "valid governmental interest" overrides the employee's *Fourteenth Amendment* rights. In violation of *NY CLS Civ S § 75* Plaintiff was suspended (July 9ᵗʰ, 2005) prior to hearing (August 25ᵗʰ, 2006) and prior to receiving written notice of charges (April 26ᵗʰ, 2006). Plaintiff's suspension was therefore improperly imposed and unjustifiably prolonged and the determination should not have been upheld.

b. In the absence of *any* evidence, the NYPD determined at the departmental trial that Plaintiff was guilty of departmental misconduct.

c. Plaintiff was also, "unofficially" placed on dismissal probation evidenced in much of the NYPD's Answer and other court documents filed at the Supreme court in regards to the *Article 78* being prefixed by the title "Probationary or 'PPO'" instead of PO. This, in spite of the fact that she already undergone her end-of probation "dole" test on or about April 15th, 2004. In addition, in May 2007 Plaintiff was placed on level I monitoring as further punishment. These acts were in plain disregard to the PC's final order.

d. Plaintiff's ex-husband was not called to be cross-examined. Instead, his hear-say remarks were repeated by Lt Farrell as submitted as evidence against Plaintiff.

e. The determination was made solely upon the conflicting testimonies of Lt Legowski of the Jersey City PD and Lt Farrell.

f. Plaintiff was never instructed of her rights to first speak to her delegate by Lt Farrell or Sgt Dibrizzi who interrogated her in the ER shortly after the incident. These MOS later suspended Plaintiff.

g. The accuracy of much of the department hearing transcript was inaccurate.

h. The testimony of PO Legowski contradicted that of Lt Farrell in regards to the location of Plaintiff's NYPD ID, which questions his recollection of all other details.

i. Although Plaintiff gave hair and urine samples for her end-of-probation dole test in or around March 2004, for reasons unknown when the Department presented paperwork for her first suspension incident in 2005 they all referred to Plaintiff's status as "Probationary." This was believed to be an intimidating tactic to scare the Plaintiff into leaving the NYPD. This was not the only false information on Plaintiff's paperwork.

j. It was not uncommon for there to be radio transmissions and comments by Plaintiff's co-workers that strongly alluded to the fact that the job was really "messing with Plaintiff" and there was nothing she could do about it except "*leave!*"

71.     So little of the departmental "investigation," hearing and subsequent finding was conducted according to departmental procedure or even lawfully, that the adopted finding could **never** have been upheld by *any* court of law except there had been a conspiracy among city and federal employees to discriminate against Plaintiff because of her status as a victim of domestic violence. As such, Defendants City and the NYPD's unsubstantiated, unlawful, and unconstitutional administrative finding should be considered invidious and motivated by unconstitutional reasons. The acts committed by Defendants violated Plaintiff's right guaranteed her by the laws of the state of New York which guarantee freedom from employment discrimination against any individual in compensation or other terms, or conditions, or privileges of employment because said individual's actual or perceived status as a victim of domestic violence.

72.     The actions of ADC Grappone and PC Kelly were in excess of any authority granted them by law, and were without justification or excuse in law.

73.     All of the acts of PC Kelly were performed to punish Plaintiff herein for requesting Sabbath accommodation, for refusing department's "plea-deal" and motivated by sex-based animus i.e. her status as a survivor of domestic abuse.

74.     *42 U.S.C. § 2000e (2) et seq.,* prohibits discrimination employers based on sex.

75.     Concerted and individual acts of Defendants did, in fact, deny the Plaintiff her *First Amendment* rights as those rights are secured to Plaintiff by the provisions of the due process clause of the *Fourteenth Amendment* to the Constitution of the United States and by *42 U.S.C. § 1983* and the statutes and laws of the State of New York.

76.     Defendants PC Kelly, ADC Grappone, DI Maddrey, and attorney Hayes acted in concert without authorization of law, willfully, knowingly and purposely, with the specific intent of depriving Plaintiff her *First Amendment* rights as those rights are secured to her by the provisions of the due process clause of the *Fourteenth Amendment* to the Constitution of the United States and rights secured her by the *USC, 42 U.S.C. § 1983,* the statutes and laws of the State of New York *i.e. Exec Law § 296 (1)(a), § 296 (6)* and *NYC Admin Code § 8-107.1(2) & (6).*

77.     Defendants, by and through its employees did, under color of state law, regulation, custom, and practice subjected Plaintiff to the deprivation of rights, privileges and immunities secured by the Constitutional and State law.

78.     As a result of Defendant's action or failure to act, Plaintiff's was deprived her fundamental liberties and property rights without due process of law under the *Fifth and Fourteenth Amendments* of the *United States Constitution.*

79.     Defendants acted with malice or with reckless indifference toward the Plaintiff's federally protected rights by harassing and retaliating against Plaintiff after she exercised said rights.

80.     Acting under the color of state law, Defendant City, knowingly recklessly, or with gross

negligence failed to instruct, supervise, control, or discipline on a continuing basis those who participated in these discriminatory acts of harassment herein alleged and from unlawfully and maliciously retaliating against Plaintiff for engaging in protected activities.

81.    Defendants violated Plaintiff's Constitutional rights by denying her substantive due process by engaging in reckless, intentionally demeaning behavior, stigmatizing her, creating a hostile work environment, denying Plaintiff career advancement and training opportunities, overtime pay, and vacation leave, and constructively terminating Plaintiff from her position of employment with the NYPD.

82.    Defendants violated Plaintiff's Constitutional rights by denying her procedural due process by engaging in reckless, intentionally damaging behavior and stigmatizing her.

83.    As a result of Defendants aforementioned conduct against Plaintiff, Plaintiff has suffered both economically and otherwise.

84.    The acts of above conspiring Defendants were motivated by impermissible consideration of Plaintiff's race, sex and religion with the intent to inhibit and discourage her exercise of her religious right of sabbath observance.

85.    As a result of the foregoing acts committed against Plaintiff by Defendants, Plaintiff sustained injury to her reputation, humiliation and embarrassment.

86.    Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff demands judgment against defendants as follows:

      d.    Judgment awarding to Plaintiff compensatory and punitive damages and the costs of this action;

      e.    Judgment expunging Plaintiff's suspension and all references thereto in the records of the NYPD;

      f.    Defendant, PC Kelly is the final "authorized decision maker" and as such claim is brought pursuant to *42 U.S.C. § 1983.*

      g.    Judgment awarding to Plaintiff attorneys' fees; and

      h.    Judgment awarding such other relief as the Court may deem just and proper.

## FOURTH CLAIM FOR RELIEF

### *Violation of 42 USCS § 1983: Right to Be Free From Sex-Based Harassment*

87.    Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 86 of this complaint.

### DEFENDANT, DI MADDREY*

88.    Defendant's said conduct was done under color of State law.

89.    The aforementioned acts of Defendants in creating a hostile work environment, stigmatizing Plaintiff from her co-workers, denying Plaintiff the right to the most basic benefit of "learning the job" while granting it to other identically-situated employees, denying Plaintiff the right to attend relevant training courses in advancement of her career while granting the right to other identically-situated employees, assigning Plaintiff to a disproportionately greater number of "emotionally disturbed person (EDP)", "non-typical" and menial assignments, other acts of discrimination described here-in and eventually unlawfully discharging Plaintiff's employment from the NYPD were in violation of Plaintiff's rights under *Admin Code §§ 8 -107 (6 ), (7); Exec.*

*Law § 296 (6)* & *(7), (42 USC § 2000e-2(a)(1),(2)* and *§ 2000e-3(a).*

90.  Defendant by his actions upheld, supported and rewarded above listed unlawful behaviors in that, in his capacity of supervisor and his knowledge of these discriminatory acts of harassment, retaliation and disparate treatment, his failure to remedy or prevent them and hence his toleration and encouragement of these acts and his misuse of authority make him liable under *42 USCS § 1981, § 1983* and *§ 1986.* Notwithstanding the fact that he "aided and abetted" the City / NYPD in perpetrating Plaintiff's harassment especially when he suspended Plaintiff in retaliation for her filing EEOC complaint # 520-2007-03464 and for commencing two *Title VII* actions alleging violations of *Admin Code §§ 8 -107 (6 )*, (7); *Exec. Law § 296 (6)* & *(7), (42 USC § 2000e-2(a)(1),(2)* and *§ 2000e-3(a).*

91.  Defendant is being sued individually and in his official capacity as an employee of Defendant the City of New York pursuant to *42 USCS § 1983.*

92.  Defendant's conduct was unlawful, beyond his lawful authority, and was a denial of a clear legal right owed to the Plaintiff.

93.  Plaintiff's career prospects and livelihood were damaged by Defendant's said conduct as described in preceding paragraphs.

94.  Because DI Maddrey's conduct was gross, willful and oppressive Plaintiff claims punitive damages of said official.

95.  Plaintiff claims attorney's fees and expenses of the Defendant pursuant to *42 U.S.C.S. § 1988.*

96.  Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff demands judgment against defendants as follows:

      a.  Judgment awarding to Plaintiff injunctive, compensatory and punitive damages and the costs of this action;

      b.  Judgment awarding to Plaintiff her attorneys' fees; and

      c.  Judgment awarding such other relief as the Court may deem just and proper.

WHEREFORE, Plaintiff prays the Court for an injunction enjoining Defendant from again engaging in the conduct complained of, and ordering Defendant to pay Plaintiff's attorney's fees and costs, and for such other, further or different relief as may be just and proper.

## DEFENDANTS, LT CAESAR & SGT. WASSINGER

97.  Defendants said conduct was done under color of State law.

98.  Defendant Lt. Caesar was a Lieutenant and the platoon commander while Plaintiff was assigned to the first platoon (2315 – 0750) while at the 73rd Pct. Suit is brought against her individually and in her capacity as an employee of Defendant City of New York.

99.  On numerous occasions Lt Caesar deprived and at times conspired with other MOS to deprive Plaintiff of legal rights guaranteed to her by the Constitution and Laws of the United States in that she treated Plaintiff disparately. By conspiring with other members of service (MOS), instructing them or acting independently, she on numerous occasions participated in discriminatory treatment of Plaintiff in regards to assignments and other acts. Her condoning and participation in these acts make her liable under *NY Exec. Law § 296 (6)* and *(7)* and *42 USC § 2000e-3(a), 42 USCS § 1981, § 1983* and *§ 1985.*

100.  Plaintiff was damaged and injured by the Lieutenant's conduct when on numerous occasions by her inaction or instruction, she allowed Plaintiff's co-workers and supervisors to harass her and authorized assignments that resulted in a drastic change in terms and conditions of Plaintiff's employment motivated by

impermissible considerations of Plaintiff's sex, race and religion.

101.   One such example occurred on March 19th 2007, when Desk Officer (D.O.) Sgt. Wassinger, instructed Plaintiff to go sprinkle the precinct parking lot with salt. When Plaintiff returned to the Desk to inform him that she could not locate the bucket, he screamed that "it was out there!" and that Plaintiff should "go look for it!" Embarrassed, she went to the female locker room. Shortly thereafter the Platoon Commander, Lt. Caesar, came, called Plaintiff, repeated the instruction and guided Plaintiff to where the bucket and salt were located. Plaintiff did as instructed and later called her union delegate PO Silverman to complain about Sgt Wassinger's and Lt Caesar's conduct which she considered to be unprofessional. Plaintiff is unaware of either Supervisor speaking to any other Officer in such manner or of them giving any other P.O.s instructions of such nature.

102.   Since Plaintiff had recently become a single-mom, it became a hardship for her to work the mid-night tour because of her, then, 2-year-old son. In September 2006 Plaintiff asked DI Maddrey and Lt Caesar to change tours so that she may work the day-tours but this request was denied and Plaintiff was not able to change her tour of duty till March of 2007.

103.   Defendants said conduct was done under color of State law.

104.   Defendants conduct was unlawful and was a denial of a clear legal right owed to the Plaintiff and was beyond their said lawful authority.

105.   Defendants are being sued individually and in their official capacities as an employee of Defendant the City of New York pursuant to *42 USCS § 1983.*

106.   Plaintiff's career prospects and livelihood were damaged by Defendants said conduct as described in preceding paragraphs.

107.   Because Lt Caesar's and Sgt Wassinger's conduct was gross, willful and oppressive Plaintiff claims punitive damages of said official.

108.   Plaintiff claims attorney's fees and expenses of the Defendant pursuant to *42 U.S.C.S. § 1988.*

109.   Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff demands judgment against defendants as follows:

     a.  Judgment awarding to Plaintiff injunctive, compensatory and punitive damages and the costs of this action;

     b.  Judgment awarding to Plaintiff her attorneys' fees; and

     c.  Judgment awarding such other relief as the Court may deem just and proper.

## FIFTH CLAIM FOR RELIEF

### DEFENDANTS: NYPD DI MADDREY, LT. DIPANE, LT CAESAR, SGT. WASSINGER

### SABBATH ACCOMMODATION REQUEST

#### *Violation of 42 USCS § 1983: Right to Be Free From Religious-Based Harassment*

103.   Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 102 of this complaint.

104.     Plaintiff believes and alleges that following events were motivated by religious-based discriminatory animus and her status as a victim of "domestic violence."

105.     After being suspended and while assigned to BNACU with a weekly schedule of Wednesday – Sunday, Plaintiff requested sabbath accommodation so that she would not be scheduled to work anytime between the hours of sunset Friday to sunset on Saturday because of her religious belief in accordance with biblical principal found in Exodus 20:8-11. This request was delayed substantially. Up until December 2006, when request was finally granted, Plaintiff was the only MOS assigned to this unit who did not have a portion of the weekend off. Also, while there, she was the only non-pregnant female until April 2006.

106.     On February 7*, 2007 Plaintiff again requested sabbath accommodation. The request was approved on March 1* by a Sgt St James at OEEO and honored by her command on the work-week schedule beginning March 3*, 2007.

107.     On February 14*, 2007 Plaintiff was scheduled to attend the range. That day, both she and her then partner, PO Jemmott, were instructed to go on a prisoner transport. When they returned to the precinct at about 0430 hrs her partner was told to remain at the precinct while another officer and Plaintiff were instructed to go to Brooklyn Central Bookings (BCB) on a second prisoner transport. Plaintiff reminded her squad Sergeant, Sgt. Vera, that she had to go to the range and had to get there by 0700 hrs. She was ignored and re-instructed to go to BCB. Not surprisingly, she was unable to go to range though P.O. Jemmott went.

108.     On the check received pay-date: March 9*, 2007, six hours were deducted from Plaintiff's "comp. time". After reporting this observation to the appropriate personnel these hours were returned. No valid explanation was given.

109.     On March 12*, 2007 Plaintiff requested to get March 17* 2007 off to attend a baby shower. When she called on March 16*, to inquire of its approval, Plaintiff was instructed to "call back" by her platoon commander, Lt. Caesar. Plaintiff called at that time because she knew that that the information was available because the roll call is prepared ahead of time since the administrative staff who do this job did not work on weekends. Plaintiff was subsequently called by her then partner, PO Herbert, and informed that the request was denied. Plaintiff then called and asked the Lt. if she could then get "lost time" up ahead (as many people frequently do) so that Plaintiff could attend the shower and then come in to work about 0100 hrs. This request was also denied. When Plaintiff reported for duty at 2315 hrs on March 17* she was informed at that time that her assignment for the night was Brookdale from 0300 hrs on March 18*, 2007. This meant that Plaintiff could indeed, have gone to the shower and come in just in time to perform her scheduled task.

110.     On March 19*, 2007, D.O., Sgt. Wassinger, instructed Plaintiff to go sprinkle the precinct parking lot with salt. When Plaintiff returned to the Desk to inform him that she did not locate the bucket, he screamed that "it was out there!" and that Plaintiff should "go look for it!" Embarrassed, she went to the female locker room. Shortly thereafter the Platoon Commander, Lt. Caesar, came, called Plaintiff, repeated the instruction and guided Plaintiff to where the bucket and salt were located. Plaintiff did as instructed and later called her union delegate PO Silverman to complain about Sgt Wassinger's and Lt Caesar's conduct which she considered to be unprofessional. Plaintiff is unaware of either Supervisor speaking to any other Officer in such manner or of them giving any other officers instructions of such nature.

111.     On April 24*, 2007 Plaintiff was notified of her placement on *Performance Monitoring* by the Integrity Control Officer, Lt. Dipane and her PBA (union) representative, P.O. Silverman. This is a disciplinary action which requires her to have a certain amount of activity in order to receive a favorable performance analysis and hence allow her to make a petition to get off. The type of Plaintiff's assignments changed and it became apparent that her supervisors did not intend that she obtain any activity which would ultimately result in even worse penalties. Plaintiff reported this inconsistency to PO Silverman. Also, Officers are usually placed on performance monitoring when they have excessive disciplinary charges or Civilian Review Board Complaints (CCRBs). Plaintiff had neither.

112.    Shortly thereafter, there was a drastic reduction of Plaintiff's patrol time.  By patrol time Plaintiff refers to those assignments, given by her supervisor, within the confines of her precinct that require or anticipate response to radio runs or allow for the opportunity to obtain activity in a police auto, as referred to as Radio Motor Patrol ("RMP").  This is the NYPD's most common method of measuring a P.O's performance to determine qualification for or disqualification from new and / better assignments.  Activity may occur in any combination of the following categories:

      i.      Arrests
      ii.     Summonses prepared
      iii     Radio runs responded to
      iv.     Reports written

113.    Change in terms & conditions of employment after requesting sabbath accommodation are as follows:

a.    Assignments on mobile patrol 7 months prior to "sabbath accommodation" request:

2006:

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| i. | July: | 8 | tours | of | a | possible | 11 | : 72% |
| ii. | August: | 5 | " | " | " | " | 17 | : 29% |
| iii. | September: | 11 | " | " | " | " | 17 | : 65% |
| iv. | October: | 9 | " | " | " | " | 20 | : 45% |
| v. | November: | 12(13) | " | " | " | " | 13 | : 100% |
| vi. | December: | 9 | " | " | " | " | 20 | : 45% |

2007

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| vii. | January: | 9 | " | " | " | " | 19 | : 47% |

b.    Assignments on patrol the month of request:

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| i. | February: | 9 | " | " | " | " | 9 | : 100 % |

c.    Assignments on patrol 7 months subsequent to request:

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| i. | March: | 1 | " | " | " | " | 14 | :  7% |
| ii. | April: | 1 | " | " | " | " | 14 | :  7% |
| iii. | May: | 3 | " | " | " | " | 21 | : 14% |
| iv. | June: | 4 | " | " | " | " | 15 | : 26% |
| v. | July: | 3 | " | " | " | " | 22 | : 14% |
| vi. | August: | 5 | " | " | " | " | 16 | : 31% |
| vii. | September: | 0 | " | " | " | " | 17 | :  0% |

114.    Plaintiff considers this reduction in patrol time to be discriminatory because there are no other similarly situated officers who were assigned to patrol and given as many non-patrol assignments as she was.  Plaintiff was told that one reason that she was not given patrol assignments was because she didn't have a steady partner.  This could not be the reason since there have been numerous days when *steady partners* were made incomplete when one officer went on  vacation; had a sick-day or other excused absence; went to court or Metrotech or was placed on a Critical Response Vehicle assignment in another precinct.  On these occasions Plaintiff could very easily have been assigned to work with these officers, but instead, some other officer (usually her junior) would be assigned to work with that officer.

115.    During the last two weeks of May and / or the first two weeks of June of 2007, Plaintiff's name was not on the roll call.  She called and made a complaint with Internal Affairs Bureau (IAB) and also informed her PBA delegates: PO Silverman and PO Gheraty.

116.    Shortly after requesting sabbath accommodation, Plaintiff started experiencing excessive late

relief; as much as 2 ½ hrs past the end of tour on one occasion. Plaintiff worked a 0705 x 1540 tour of duty and though it is occasionally possible, considering the nature of Plaintiff's job, it was very unnerving since the officer that relieved her on that occasion came from the precinct and had a tour of duty of 1200 x 2040, allowing ample time for him to get to location on time. These late reliefs persisted in spite of Plaintiff following department procedure and calling the various Desk Officers (DOs) to request relief at least 1 hour prior to end of my tour on each occassion. This late relief became so frequent that Plaintiff accrued the following amount of overtime:

a.     Hours of accumulated "late relief" prior to "sabbath accommodation" request:
       2006:

|      |            |          |
|------|------------|----------|
| i.   | July:      | 0 hrs    |
| ii.  | August:    | 0 hrs    |
| iii. | September: | 0 hrs    |
| iv.  | October:   | 0 hrs    |
| v.   | November:  | 2 hrs    |
| vi.  | December:  | 0 hrs    |

       2007:

|      |            |          |
|------|------------|----------|
| vii. | January:   | 1 ½ hrs  |

b.     Hours of accumulated "late relief" the month "sabbath accommodation" was requested:

|    |           |        |
|----|-----------|--------|
| i. | February: | ½ hr   |

c.     Hours of accumulated "late relief" subsequent to "sabbath accommodation" request:

|      |            |          |
|------|------------|----------|
| i.   | March:     | 3 ¼ hrs  |
| ii.  | April:     | 6 hrs    |
| iii. | May:       | 6 ¼ hrs  |
| iv.  | June:      | 2 ¾ hrs  |
| v.   | July:      | 3 ¼ hrs  |
| vi.  | August:    | 0 hrs    |
| vii. | September: | 6 ¾ hrs  |

117.    The above actions of NYPD MOS including but not limited to Commanding Officer, DI Maddrey, Lt Caesar, and other supervisors were without justification or excuse in law.

118.    The Civil Rights Act of 1964 generally proscribes religious-based discrimination. *42 U.S.C. § 2000e (2)-2a(1)* & *(2)* prohibits discrimination employers based on religion.

119.    Defendants said conduct was done under color of State law and motivated by religion-, race- and sex-based discrimination.

120.    The concerted acts of these NYPD MOS did, in fact, deny Plaintiff her freedom from religious discrimination as guaranteed in the *First Amendment* to the Constitution of the United States rights secured her by *42 U.S.C. § 1983* and the statutes and laws of the State of New York *i.e. Exec Law § 296 (1) (a), § 296 (6)* and *NYC Admin Code § 8-107.1(2)* and *(6)*.

121.    Defendants at times acted independently and at others, in concert, without authorization of law, willfully, knowingly and purposely, with the specific intent of depriving Plaintiff of her *First Amendment* rights.

122.    As a result of the foregoing acts committed against Plaintiff by Defendants, Plaintiff sustained injury to her reputation, humiliation, loss of opportunity to advance in her career and embarrassment.

123.    Because Defendants' conduct was gross, willful and oppressive, Plaintiff claims punitive

damages of each MOS individually and in their official capacity.

124. Plaintiff claims attorney's fees and expenses of Defendants pursuant to *Title VII, 42 U.S.C.S. § 1986* and *42 U.S.C.S. § 1988.*

125. Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

    a.    Judgment awarding to Plaintiff compensatory and punitive damages and the costs of this action;

    b.    Judgment awarding to Plaintiff attorneys' fees; and

    c.    Judgment awarding such other relief as the Court may deem just and proper.

## SIXTH CLAIM FOR RELIEF

### DEFENDANTS: CITY, DHS, BFC, BHC, KCH, CIH

### HARASSMENT/ DISCRIMINATORY ACTS MOTIVATED BY RETALIATION

#### Violation Of *42 USCS § 1983* : *First Amendment Right To Free Speech*

##### 1. Complaints filed with EEOC, the Commission and the USC SDNY

126. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 125 of this complaint.

127. On or about June 22nd, 2007 Plaintiff filed a charge of employment discrimination with the City of New York Commission on Human Rights (Commission) and the office of Equal Employment Opportunity Commission (EEOC) alleging disparate treatment motivated by race-, sex- and religious-based discrimination. Shortly thereafter, three new types of non-patrol assignment were given to Plaintiff. The following are monthly comparisons of foot-post assignments by month:

    I.    Shooting-post
    II.    Skywatch (where officer sits in a crane like vehicle for the entire tour)
    III.    Dead on arrival (DOA):

    a.    Frequency of type I, II or III assignments prior to Plaintiff filing charge:

| | | |
|---|---|---|
| i. | July: | 0 |
| ii. | August: | 0 |
| iii. | September: | 0 |
| iv. | October: | 0 |
| v. | November: | 0 |
| vi. | December: | 0 |
| vii. | January: | 0 |
| xii. | February: | 0 |
| xiii. | March: | 0 |
| xiv. | April: | 0 |
| xv. | May: | 0 |

    b.    Frequency of type I, II or III assignments in month Plaintiff filed charge:

        i.    June:        0

    c.    Frequency of type I, II or III assignments subsequent to Plaintiff filing charge:

        i.    July:        1(I)
                                1(II)
        ii.    August:     1(I)
        iii.    September:  2(I)

128.    Above assignment frequency and pattern indicate a change in terms and conditions of employment motivated by invidious animus were made to intimidate Plaintiff and hence committed unlawfully.

129.    The Civil Rights Act of 1964 has an anti-retaliatory provision which proscribes retaliatory-based harassment and discrimination.

130.    By changing the terms and conditions of Plaintiff's employment Defendants violated *42 U.S.C. § 2000e-3(a)* which prohibits discrimination by employers based on retaliation.

131.    Defendants said conduct was done under color of State law.

132.    These concerted acts of these MOS of the NYPD did, in fact, deny Plaintiff rights secured to her by *42 U.S.C. § 1983* and *§ 19835.*

133.    Defendants actions were committed in violation of *Exec Law § 296 (1)(a), (6)* and *Admin Code § 8-107.1(2)* & *(6).*

134.    Defendants acted independently and in concert without authorization of law, willfully, knowingly and purposely, with the specific intent of depriving Plaintiff of her *First Amendment* rights.

135.    The acts of the Defendants did, in fact, deny the Plaintiff her rights secured by the provisions of the due process clause of the *Fourteenth Amendment* to the Constitution of the United States and by *42 U.S.C. § 1983* and the statutes and laws of the State of New York.

136.    As a result of the foregoing acts committed against Plaintiff by Defendants, Plaintiff sustained injury to her reputation, humiliation and embarrassment.

137.    Plaintiff was damaged by the Defendants' said conduct. The NYPD's numerous unlawful decisions make them liable pursuant to *42 U.S.C. § 1983.*

138.    Plaintiff claims punitive damages of Defendants because their conduct was gross, willful and oppressive.

139.    Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff demands judgment against defendants as follows:

    a.    Plaintiff claims attorney's fees and expenses of the Defendant pursuant to *42 U.S.C.S. § 1988.*

    b.    Judgment awarding to Plaintiff compensatory and punitive damages and the costs of this action;

c.   Judgment awarding to Plaintiff attorney's fees; and

d.   Judgment awarding such other relief as the Court may deem just and proper.

## II.   Retaliatory acts based on Plaintiff's filing of *Article 78*

140.   Complaint was submitted in the Supreme Court on September 24th, 2007. In retaliation for doing so, Plaintiff was removed from patrol assignment in September 2007 and placed on solo-foot assignments in the adjoining 75th Pct.

141.   On October 11th, 2007 Plaintiff was offered a roof-top assignment at the residence of a fatal shooting within the confines of the 83rd Pct as a reward for arriving to post first. From October 24th, 2007 till time when Plaintiff was suspended on November 20th, 2007 she was assigned to the adjoining 75th Pct. to stand on a robbery post.

142.   City Defendants filed their *Answer* on October 19th, 2007.

143.   On November 19th, 2007 City Defendants were served with Plaintiff's employment discrimination complaint alleging violation of *42 U.S.C. § 2000e-3(a)*, *NYSHRL* and *NYCHRL*. Later that day Plaintiff was placed on modified assignment and then suspended on November 20th, 2007.

144.   In regards to this unlawful and retaliatory suspension incident Plaintiff filed on or about November 22nd, 2007 an *Article 78* requesting permission to proceed "in forma pauperis," but this request was denied by a Judge Hitler of the Supreme Court, New York County.

145.   An order granting transferal of Plaintiff's *Article 78* was given by the Hon. Lewis Bart Stone, and entered in the IAS Part of the Supreme Court, New York County on December 7th, 2007 pursuant to *CPLR 7804(g)* and *7803(4)*.

146.   In December 2007 Plaintiff applied for unemployment insurance but it was discontinued after approximately five weeks because of false allegations of employer.

147.   Plaintiff filed her "Order of transference" of *Article 78* on January 14th, 2008 with the Supreme Court of The State of NY Appellate Division: First Department.

148.   In January & March 2008 Plaintiff applied for public assistance and for rental assistance. In regard to the latter, the NYC Department of Human Resources ("HRA") agreed to contribute $283 towards Plaintiff's rent and referred her to the agency FEGS for assistance with the balance. Though Plaintiff kept all her appointments, neither FEGS nor the NYCDHR ever made any payments and Plaintiff and her 5-year-old son were eventually evicted in the middle of winter 2008.

149.   Plaintiff's public assistance benefits for both she and her son were discontinued on or about July 19th, 2008.

150.   In July 2008 two plain-clothes NYPD officers came to Plaintiff's home and screamed at her through her open window asking "if she had taken her meds or if she and her son had eaten!!?" Their loud outburst at window and banging on Plaintiff's front door caused such an uproar that Plaintiff's upstairs neighbor came and inquired as to Plaintiff and son's well-being and need for the unnecessary outburst. It is unclear what these plain-clothes officers were referring to since Plaintiff had not been taking any medication. The next day Plaintiff reported these events to unknown officer of the Commission but Plaintiff never heard any further from the office.

151.   Plaintiff was visited twice by ACS in July 2008 who informed her that the NYPD had called their office and they were therefore responding accordingly. As evidence that the responding official did not believe the claim to be valid she never came into the apartment and the NYPD were called only at Plaintiff's insistence after she realized inconsistencies in official's claim.

152.    On October 6th, 2008 the Hon USDJ, Thomas Griesia conducted the first conference in regards to Plaintiff's federal complaint of employment discrimination which she filed on over a year earlier. At this time he informed Plaintiff of the futility of her efforts. He also stated that the case was to be disposed of shortly and therefore Plaintiff need not make any further requests of the court. He advised Defendants to all disregard Plaintiff's *Motion for Interrogatories* and to go ahead and make their several requests for "Summary Judgment" as he will have "no problem honoring those requests."

153.    One week later, on October 15th, 2008 Plaintiff's vehicle was vandalized and though numerous calls were made no tow company responded and Plaintiff was made to donate the vehicle.

154.    On October 22nd, 2008 Plaintiff appeared at Appellate Division First Judicial Department for argument / submission of Plaintiff's *Article 78*.

155.    On December 5th, 2008 Plaintiff filed her "Notice of Motion For Reargument / Leave To Appeal" in regards to her *Article 78*.

## SEVENTH CLAIM FOR RELIEF

## DEFENDANTS: NEW YORK CITY DEPARTMENT OF HOMELESS, "DHS"

### *Violation of 42 USCS § 1983: Right to Be Free From Religious-Based Harassment*

156.    Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 155 of this complaint.

157.    On December 19th, 2008 Plaintiff and her son were evicted.  They then went to the NYC office of Human Resources located at 45 Hoyt St Brooklyn, NY who directed Plaintiff to the family shelter, Prevention Assistance and Temporary Housing (PATH) in the Bronx.

158.    As part of the in-take process Plaintiff was subjected to extensive questioning where-in she was made to reveal the details of her employment history and problems with Defendant City.

159.    On December 31st, 2008 Plaintiff and son were evicted from the shelter on order of unknown Defendant DHS and DHS staff.

160.    While at shelter neither Plaintiff nor her son were subjected to the mandatory physical or medical intake exams required by all new applicants, neither was their paper-work processed like other similarly situated clients. Her name appeared incorrectly spelt for the entire time that she was in the shelter system.

161.    Very little of the standard procedure was followed for the duration of Plaintiff and her son's stay while at shelter.

162.    The actions of DHS staff were in excess of any authority granted them by law, and were without justification or excuse in law.

163.    Defendants' actions were unlawful and illegal, and were a denial of a clear legal right owed to the Plaintiff and were beyond Defendants' lawful authority.

164.    The Civil Rights Act of 1964 generally proscribes sex-based discrimination. *42 U.S.C. § 2000e (2) et seq.*, prohibits discrimination employers based on sex.

165.    Defendants said conduct was done under color of State law.

166.    Defendants acted independently and in concert without authorization of law, willfully, knowingly and purposely, with the specific intent of depriving Plaintiff of her *First Amendment* rights.

167.     The acts of the Defendants did, in fact, deny the Plaintiff her *First Amendment* rights as those rights are secured to Plaintiff by the provisions of the due process clause of the *Fourteenth Amendment* to the Constitution of the United States and by *42 U.S.C. § 1983* and the statutes and laws of the State of New York.

168.     As a result of the foregoing acts committed against Plaintiff by Defendants, Plaintiff sustained injury to her reputation, humiliation and embarrassment.

169.     Because Defendant's conduct was gross, willful and oppressive, the Plaintiff claims punitive damages of said officials.

170.     Plaintiff claims attorney's fees and expenses of the Defendant pursuant to *42 U.S.C.S. § 1988.*

171.     Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff demand judgment against defendants as follows:

     a.   Judgment awarding to Plaintiff injunctive, compensatory and punitive damages and the costs of this action;

     b.   Judgment awarding to Plaintiff her attorneys' fees; and

     c.   Judgment awarding such other relief as the Court may deem just and proper.

172.     Defendants acted independently and in concert without authorization of law, willfully, knowingly and purposely, with the specific intent of depriving Plaintiff of her *First Amendment* rights.

173.     The acts of the defendants did, in fact, deny the Plaintiff her *First Amendment* rights as those rights are secured to Plaintiff by the provisions of the due process clause of the Fourteenth Amendment to the Constitution of the United States and by 42 U.S.C. § 1983 and the statutes and laws of the State of New York.

## EIGHTH CLAIM FOR RELIEF

### DEFENDANTS, BROOKDALE HOSPITAL MEDICAL CENTER & STAFF

### DISCRIMINATION / HARASSMENT ON BASIS OF RELIGION

#### *Violation of 42 USCS § 1983: First Amendment Right of Religious Freedom*

174.     Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 173 of this complaint.

175.     Defendants, facilitated the discrimination and harassment of Plaintiff by conspiring internally among staff and externally with co-conspirator, Defendant NYPD to interfere with Plaintiff's peaceful stay at facility in violation of *CLS Exec § 296(6)* and *(7), 42 USCS § 1981* and *1985 (3).* While on-duty at facility various employees acted in concert and individually to harass Plaintiff in regards to her right to freedom to religious choice and practice as a black, female, Sabbath observer. in the following respects:

     a.   Comments and actions by staff namely but not limited to Ms Philbert, Mr Glenton, Mr Bernard and Mr Mc Collin/ Mc Cullum indicated that they were apparently aware of the "real" reason Plaintiff was stationed at facility so often.

     b.   Patients under Plaintiff's guard did not need to be at facility for such extended periods though Defendant created medical necessity indicating otherwise so as to extend the opportunities for their retaliatory harassment of Plaintiff all the while facilitating Defendant, NYPD's need to create assignments of harassment and insult for Plaintiff as part of their intimidating tactics.

     c.   Repeated violation of hospital policies indicated that these "patients" that Plaintiff guarded

were for whatever reason, more privileged than other patients as their visitors came and left at will even though many of these "patients" were in critical condition.

d.  The orchestrated acts of staff and even the room assignments of patients assigned to Plaintiff are believed to have been done to harass Plaintiff in retaliation for assisting her mother (employee of defendant) in filing a still pending religious discrimination complaint and to deprive Plaintiff of her civil right to be free of discrimination because of her race, religious persuasion and gender.  These acts were committed in violation of the *NYC Human Rights Law, N.Y.C. Admin Code §§ 8 -107 (6), (7) & (20), N.Y. Exec. Law § 296 et seq., Title VII.*

176.  As a result of the foregoing acts committed against Plaintiff by Defendants, Plaintiff sustained injury to her reputation, humiliation and embarrassment.

177.  Because Defendants conduct was gross, willful and oppressive, the Plaintiff claims punitive damages of said officials.

178.  Plaintiff claims attorney's fees and expenses of the Defendant pursuant to *42 U.S.C.S. § 1988.*

179.  Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff demands judgment against defendants as follows:

a.  Judgment awarding to Plaintiff injunctive, compensatory and punitive damages and the costs of this action;

b.  Judgment awarding to Plaintiff her attorneys' fees; and

c.  Judgment awarding such other relief as the Court may deem just and proper.

180.  Defendants acted independently and in concert without authorization of law, willfully, knowingly and purposely, with the specific intent of depriving Plaintiff of her *First Amendment* rights.

181.  The acts of the defendants did, in fact, deny the Plaintiff her *First Amendment* rights as those rights are secured to Plaintiff by the provisions of the due process clause of the Fourteenth Amendment to the Constitution of the United States and by *42 U.S.C. § 1983* and the statutes and laws of the State of New York.

## NINTH CLAIM FOR RELIEF

### DEFENDANTS, PBA, WLL; & ATTORNEY CRAIG HAYES

### DISCRIMINATION / HARASSMENT ON BASIS OF RELIGION & SEX

182.  Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 181 of this complaint.

183.  Plaintiff, was a member of the PBA at all times relevant to this claim and asserts claim of unfair representation, breach of statutory duty of fair representation and failure to represent her against union under *29 USCS § 159,* the *NYC Human Rights Law, N.Y.C. Admin Code §§ 8 -107.1(2)* and *(6), CLS Exec § 296(6), 42 USCS §§ 1981, 1983* and *1985,* because of her status as a black sabbath-observer and a victim of domestic violence in violation of *SEC. 2000e-2. [Section 703] c (1), Admin. Code § 8-107(a)* and *N.Y. Civil Rights Law § 43.*

184.  Claim is brought against WLL for assigning attorney Hayes to her case since his "failure to represent" resulted in much of Plaintiff's subsequent invidious treatment suffered hereafter.  Plaintiff believes that WLL & Hayes' failure to do anything in their legal capacity to challenge department's unsubstantiated charges with regard to Plaintiff's first suspension incident indicates collaborative efforts between defendants and

her employer to deny her a fair hearing motivated by sex-based discriminatory reasons. Not only did WLL fail to call any witness on Plaintiff's behalf but Hayes repeatedly insisted that Plaintiff "gratefully" accept penalty. Additionally, he raised not one objection against the NYPD's unlawful investigatory process which violated several departmental procedures. It can be assumed that Hayes' unlawful actions offer clear indication that WLL conspired in their capacity as Plaintiff legal representative to deprive her of her rights to equal protection of the laws because of her status as a victim of domestic violence.

185.    With regard second suspension incident, Plaintiff called the firm to request an attorney on November 19th/ 20th, 2007 but although Hayes replied that he was responding, he never did came.

186.    Plaintiff asserts claim of violations of CSL § 75.1 and tortious interference with contract or prospective economic advantage or any other tort and any other claims relating to or arising out of Plaintiff's employment, suspension and subsequent termination from the NYPD. Defendants actions or inaction plainly reveal their "aiding and abetting" NYPD's unlawful decision to punish Plaintiff for having filed an *Article 78* and to discriminate against Plaintiff because of her status as a victim of domestic violence and hence facilitating "City Defendants" efforts to unlawfully terminate Plaintiff.

187.    Plaintiff was damaged in that Defendant's said conduct caused Plaintiff to sustained injury to her reputation, humiliation and embarrassment.

188.    Because Defendants conduct was gross, willful and oppressive, Plaintiff claims punitive damages of said official.

189.    Plaintiff claims attorney's fees and expenses of the Defendant pursuant to 42 U.S.C.S. § 1988.

190.    Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff demands judgment against defendants as follows:

      a.    Judgment awarding to Plaintiff injunctive, compensatory and punitive damages and the costs of this action;

      b.    Judgment awarding to Plaintiff her attorneys' fees; and

      c.    Judgment awarding such other relief as the Court may deem just and proper.

## TENTH CLAIM FOR RELIEF

### DEFENDANTS: APRIGLIANO, KALE & COMMISSION

#### *Violation of 42 USCS § 1985: First & Fourteenth Amendment Due Process Rights*

191.    Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 190 of this complaint.

192.    Defendant, City of Commission is a municipal corporation organized and existing under the laws of the State of New York. Defendants, Kale and Aprigliano, while acting in their capacity as attorneys of said Commission unlawfully deprived and conspired to deprive Plaintiff of her legal rights guaranteed to her by the Constitution and Laws of the United States.

193.    When Plaintiff visited the Commission in September, 2007 to follow up on a charge she had filed in June 2007 she was informed that her case had been closed. Plaintiff asked how it was that she was not informed of this and almost three months had passed since the filing. No valid reason was given. Plaintiff was then asked to sit with both Aprigliano and Kale, to initiate a second in-take process, although the case was assigned to the latter. During the conversation, the former asked Plaintiff "if she didn't realize the futility of reporting her complaint since this was also a City agency!" Aprigliano then proceeded to caution Plaintiff in a

much amplified tone combined with other intimidating gestures that he had seen "very bad things happen to City workers *like me* who filed claims of discrimination against the city" and asked Plaintiff if "she was *sure* she still wanted to file claim!?"

194.     The case was eventually assigned to Kale who failed to investigate the matter in violation of the *NYC Human Rights Law, N.Y.C. Admin Code §§ 8 - 107(19)*, and *603 (a)*.     These actions and that of other staff at agency to denied Plaintiff full and equal benefit of laws in their capacities pursuant to authority granted to them by the City of NY can be representative of the agency's and City's official municipal policy and practice.

195.     Defendant's inaction ultimately resulted in Plaintiff's work conditions becoming completely intolerable and in her dismissal.

196.     Attorneys said conduct was committed under color of State law, and pursuant to a custom or practice endorsed or approved by the City.

197.     Defendants said actions violated Plaintiff rights secured under the *First, Thirteenth* and *Fourteenth Amendments, Admin Code §§ 8 - 107(19)* and *603 (a), CLS Exec § 296(6)*, and *42 U.S.C.S. § 1985* and *Title VII.*

198.     Defendants' inaction by not investigating Plaintiff's claims resulted in the infliction of much further unnecessary psychological torture, humiliation, harassment, job loss and hospitalization.

199.     Aprigliano's threatening remarks caused Plaintiff to feel intimidated and discouraged and she lost confidence in Defendants and the Commission's ability to impartially investigate her claim.

200.     Plaintiff claims attorney's fees and expenses of the Defendants pursuant to *42 U.S.C.S. § 1988* and *Title VII.*

201.     Because of the willful, gross and oppressive conduct of the Defendants, the Plaintiff also claims punitive damages of the Defendants.

## ELEVENTH CLAIM FOR RELIEF

### DEFENDANTS: CITY, NYPD, HRA

#### SECOND SUSPENSION INCIDENT

##### *Violation of 42 USCS § 1983: First Amendment Right to Free Speech*

202.     Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 201 of this complaint.

203.     On November 19th, 2007 City Defendants were served with Plaintiff's employment discrimination complaint (USDC SDNY #07 Civ 10260) alleging violation of *Title VII* . Later that day Plaintiff was placed on modified assignment and then suspended on November 20th 2007. In regards to this unlawful and retaliatory suspension incident Plaintiff filed on or about November 22nd, 2007 an *Article 78* requesting permission to proceed "*in forma pauperis,*" but this request was denied by a Judge Hitler.

204.     In December Plaintiff applied for unemployment insurance but it was discontinued after approximately five weeks.

205.     In January & March 2008 Plaintiff applied for public assistance and for rental assistance. In regard to the latter, the NYC Department of Human Resources ("HRA") agreed to contribute $283 towards Plaintiff's rent and referred her to the agency FEGS for assistance with the balance. Though Plaintiff kept all her appointments, neither FEGS nor the NYCDHR ever made any payments and Plaintiff and her 5-year-old son were eventually evicted in the middle of winter 2008.

206.     Defendants acted independently and in concert without authorization of law, willfully,

knowingly and purposely, with the specific intent of depriving Plaintiff of her *First Amendment* rights.

207. The acts of the defendants did, in fact, deny the Plaintiff her *First Amendment* rights as those rights are secured to Plaintiff by the provisions of the due process clause of the *Fourteenth Amendment* to the Constitution of the United States and by *42 U.S.C. § 1983* and the statutes and laws of the State of New York.

208. As a result of the foregoing acts committed against Plaintiff by Defendants, Plaintiff sustained injury to her reputation, humiliation, eviction and embarrassment.

209. Because the Defendant Official's conduct was gross, willful and oppressive, the Plaintiff claims punitive damages of said official.

210. Plaintiff claims attorney's fees and expenses of the Defendant pursuant to *42 U.S.C.S. § 1988*.

211. Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff demands judgment against defendants as follows:

        a.     Judgment awarding to Plaintiff injunctive, compensatory and punitive damages and the costs of this action;

        b.     Judgment awarding to Plaintiff her attorneys' fees; and

        c.     Judgment awarding such other relief as the Court may deem just and proper.

## TWELVETH CLAIM FOR RELIEF

### DEFENDANTS: HHC, DOHMH, CIH, KCH & ALL PSYCHIATRISTS & HOSPITAL STAFF

#### *Violation of 42 USCS § 1983: First Amendment Right to Free Speech*

212. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 211 of this complaint.

213. City Defendants terminated Plaintiff's employment with the NYPD on January 6th, 2009.

214. On January 27th, 2009 unknown Psychiatrist / intake attendant did admit Plaintiff to CI's Emergency unit. psychiatric hospitalization although the Plaintiff did not show signs of dangerousness

215. On January 28th, 2008 Dr Julia Pavlov and Dr Dewitt Elverson of CIH admitted, confined and did authorize the involuntary and unsubstantiated hospitalization of Plaintiff at CIH's psychiatric unit for twenty-nine days. Defendants did so although Plaintiff:

        a.     Was not nor has ever been mentally ill, nor in need of confinement,

        b.     Was no danger to herself or others;

        c.     Could have been evaluated in a less restrictive means.

216. Defendants did not provide Plaintiff with:

        i.     notice of the basis of her confinement;

        ii.     an opportunity to challenge her confinement; or

217. Plaintiff alleges that this treatment was the result of Defendant's policy of admitting and confining persons remanded to CIH pursuant to Section 251 ("Section 251 remandees") without: (1) determining whether less restrictive measures are available; (2) making independent findings as to dangerousness; and (3) providing the requisite procedural guarantees. Defendants had authority over the admissions to CIH of persons remanded under Section 251.

218. Plaintiff was prescribed psychotropic medication which was forcibly administered violating Plaintiff "right to refuse medication."

219. Shortly thereafter Defendant Pavlov diagnosed Plaintiff as a paranoid schizophrenic.

220. Plaintiff asserts and attests that Defendant's actions were:

   a. Retaliatory for her having challenged her unlawful suspensions with the Commission and the EEOC. Based on discriminatory animus on basis of Plaintiff's status as a survivor of (i) domestic violence and (ii) religion.

   b. Committed in attempt to deter her from challenging City defendants' unlawful, unconstitutional and retaliatory actions against her for having filed complaints with the Commission, EEOC and the USEDC NY.

   c. Instrumental in denying Plaintiff her constitutional rights of due process when it:

      i. Unlawfully detained and involuntarily confined Plaintiff to CIH for treatment without any justification, in violation of her constitutional rights.

      ii. Labeled Plaintiff as mentally ill without evidence.

      iii. Deprived Plaintiff of her liberty by emergency certifying her without evidence, that they she was a danger to herself and others.

      iv. Unlawfully authorized the administration of medication against the will or consent of Plaintiff without evidence or valid reason. Plaintiff asserts further that the administration of additional medication, when it was unnecessary and unwanted, violated her right to bodily integrity and personal security protected by the NYS and US Constitutions, and also violated various state statutes and regulations.

      v. Unlawfully and unnecessarily detained Plaintiff when she did not pose a risk of injuring herself or others, and was deprived of her right to liberty as guaranteed by the *Fourteenth Amendment* to the *US Constitution.*

      vi. Failed to follow proper procedure when it failed to follow proper discharge procedure.

221. Defendant Psychiatrist Julia Pavlov, hereinafter called "Pavlov," is a psychiatrist at Coney Island Hospital of Brooklyn, New York.

222. Defendants, NYC Department of Health & Mental Hygiene ("DOHMH"), CIH, Dr Pavlov and Dr Elverson, did authorize the involuntarily and unsubstantiated hospitalization of Plaintiff at CIH's psychiatric unit for twenty-nine days. Defendants are sued individually and in their official capacity as psychiatrists at CIH.

223. Each Defendant's said conduct was done under color of State law and pursuant to *42 U.S.C.S. §1983* suit is brought against each individually and in their official capacities as employees of Defendant the City of New York.

224. Each Defendant Psychiatrist's conduct was unlawful and illegal, and was a denial of a clear legal right owed to the Plaintiff and was beyond their lawful authority.

225. The diagnosis of each psychiatrist was a fabricated false assertion about Plaintiff committed to conspire with Plaintiff's employer in attempt to prevent her from her job and hence in violation of.

226. Defendants acted independently and in concert without authorization of law, willfully, knowingly and purposely, with the specific intent of depriving Plaintiff of her *First Amendment* rights.

227. The acts of the defendants did, in fact, deny the Plaintiff her *First Amendment* rights as those rights are secured to Plaintiff by the provisions of the due process clause of the *Fourteenth Amendment* to the Constitution of the United States and by *42 U.S.C. § 1983* and the statutes and laws of the State of New York.

228.    As a result of the foregoing acts committed against Plaintiff by Defendants, Plaintiff sustained injury to her reputation, humiliation and embarrassment.

229.    Because the Dr Pavlov's and Dr Elverson's conduct was gross, willful and oppressive, the Plaintiff claims punitive damages of said official.

230.    Plaintiff claims attorney's fees and expenses of the Defendant pursuant to *42 U.S.C.S. § 1988.*

231.    Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff demands judgment against defendants as follows:

    a.    Judgment awarding to Plaintiff her attorneys' fees; and

    b.    Judgment awarding such other relief as the Court may deem just and proper.

    c.    Judgment awarding to Plaintiff injunctive, compensatory and punitive damages and the costs of this action

### THIRTEENTH CLAIM FOR RELIEF

### DEFENDANTS: 2 UNKNOWN NYPD OFFICERS & 2 UNKNOWN PARAMEDICS, UNKNOWN PSYCHIATRIST, KCH, UNKNOWN KCH STAFF, DR SHAPIRO, ST JOHN'S HOSPITAL, UNKNOWN PSYCHIATRIST & STAFF OF ST JOHN'S UNIVERSITY HOSPITAL

*Violation of 42 U.S.C. § 1983: First Amendment Right To Free Speech*

### FIRST HOSPITALIZATION INCIDENT

232.    Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 231 of this complaint.

233.    On or about the November 13th, 2009, unknown NYPD officers and EMT paramedics who in doing so deprived and conspired to deprive Plaintiff legal rights guaranteed to her by the Constitution and Laws of the United States in that Plaintiff was unlawfully removed from residence and involuntary hospitalized for a period of two months. Plaintiff makes claim for constitutional violation under *Fourth Amendment.*

234.    Plaintiff was damaged and injured by the Defendant's said conduct as follows:

    a.    Unable to sleep for approximately six months after her release from KCH.

    b.    Interruption of menstruation for approximately six months after her release from KCH.

    c.    Loss of friends and family contacts

    d.    Marred reputation

235.    Unknown Defendant Psychiatrist did unlawfully authorize Plaintiff's commitment without supporting evidence from the psychiatric evaluation. Plaintiff believes that this determination to further Defendant City's attempt to cause Plaintiff to abandon her federal claim and / be unavailable to respond to any Motions.

236.    It is obvious that this determination was made in consideration of impermissible reasons making it objectively reasonable and illegal.

237.    On both occasions that Plaintiff was hospitalized and confined she did not pose a danger to herself or others and as such indicates a substantive due process claim because the Constitution prohibits the confinement of a non-dangerous mentally ill person.

238.    Plaintiff was neither dangerous nor is she / has she ever been mentally ill and hence did not require any psychiatric evaluation.

239.    Above decisions constituted a substantial departure from accepted judgment, practice and standards in violation of the *Fourteenth Amendment*

240.    Defendants' conduct were gross, willful and oppressive, therefore Plaintiff claims punitive damages of each defendant.

241.    Plaintiff claims attorney's fees and expenses of the Defendant pursuant to *42 U.S.C.S. § 1988.*

242.    Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

  a.    Judgment awarding to Plaintiff injunctive, compensatory and punitive damages and the costs of this action;

  b.    Judgment awarding to Plaintiff her attorneys' fees; and

  c.    Judgment awarding such other relief as the Court may deem just and proper.


## FOURTEENTH CLAIM FOR RELIEF

## DEFENDANTS: HON. JUDGE ROBIN K. SHEARES

### *Violation of 42 U.S.C. § 1983: Fifth & Fourteenth Amendment Right To Due Process Rights*

### CUSTODY OF SON

243.    Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 242 of this complaint.

244.    Plaintiff's son was taken away and Plaintiff's parental rights terminated on January 24th, 2009 by Defendant Hon. Judge Robin K. Sheares for no lawful reason without Plaintiff being notified.

245.    On or about the January 27th, 2009 said official deprived and conspired to deprive Plaintiff of Plaintiff's legal rights guaranteed to her by the Constitution and Laws of the United States in that Plaintiff's son was taken away from her after she was unlawfully and unnecessarily hospitalized at Defendant CIH and without being notified or without legitimate reason.

246.    Defendant's said conduct was done under color of State law.

247.    Defendant's conduct was unlawful, illegal and retaliatory.

248.    Such conduct constituted a denial of a clear legal right owed to the Plaintiff and was beyond her lawful authority.

249.    Plaintiff and son suffered much pain and distress as a result of Defendant's said reckless and invidious conduct

250.    Plaintiff has been unsuccessful in regaining custody though she has made request of the court and proceeding is has been substantially delayed.

251.    Defendant's conduct was gross, willful and oppressive, hence Plaintiff claims punitive damages of said Defendant.

252.    Above acts were unlawful and illegal, and was a denial of a clear legal right owed to the Plaintiff and was beyond Defendant's lawful authority.

253. Plaintiff believes that decision to terminate Plaintiff's custodial rights with regard to her son were based on consideration of impermissible reasons of retaliation and Plaintiff's religion

254. Plaintiff claims attorney's fees and expenses of the Defendant pursuant to *42 U.S.C.S. § 1988.*

255. Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff demands judgment against defendants as follows:

    a. Injunctive, compensatory, punitive damages and the costs of this action;

    b. Attorneys' fees; and

    c. Other relief as the Court may deem just and proper.

## FIFTEENTH CLAIM FOR RELIEF

### DEFENDANTS: UNKNOWN SUPREME COURT JUDGE, 2 NYC SHERIFFS

### UNLAWFUL ARREST/DETENTION OF PLAINTIFF

#### *Violation of 42 USCS § 1983: First Amendment Right To Free Speech*

256. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 255 of this complaint.

257. On December 19th, 2008 Plaintiff and her then, 5-year-old son were evicted.

258. Plaintiff and son then went to PATH Family Shelter.

259. Plaintiff continued to monitor docket and submit the necessary paperwork to keep her employment discrimination federal complaint case current.

260. Plaintiff and son were assigned to a temporary shelter in January 2009 in Jamaica Queens, NY.

261. On January 27th, 2009 while at the Queens Library, Central Branch location without reason or warning two NYC Sheriff detained / arrested and transported both Plaintiff and her son to the King's County Supreme Court where Defendant unknown Judge did order that Plaintiff be hospitalized for observation.

262. The actions of unknown Judge of room #479 Brooklyn Supreme Court were in excess of any authority granted him by law, and were without justification or excuse in law.

263. Defendant's actions were unlawful and illegal, and were a denial of a clear legal right owed to Plaintiff and were beyond his lawful authority.

264. Defendants' said conduct was done under color of State law.

265. Defendant Official's conduct was retaliatory, unlawful, inhumane, and was a denial of a clear legal right owed to the Plaintiff and was beyond Defendants lawful authority.

266. The acts of the Defendants did, in fact, deny the Plaintiff her *First Amendment* rights as those rights are secured to Plaintiff by the provisions of the due process clause of the *Fourteenth Amendment* to the Constitution of the United States and by *42 U.S.C. § 1983* and the statutes and laws of the State of New York.

267. Defendant unknown Supreme Court judge did act in concert with Defendant NYPD and as an agent of Defendant City without authorization of law, willfully, knowingly and purposely, with the specific intent of depriving Plaintiff of their *First Amendment* rights and in violation of *Exec Law § 296 (1)(a), (6)* and *Admin Code § 8-107.1(2), (6)* &(7).

268.     Defendant acted independently and in concert without authorization of law, willfully, knowingly and purposely, with the specific intent of depriving Plaintiff of her *First Amendment* rights.

269.     As a result of the foregoing acts committed against Plaintiff by Defendant, Plaintiff sustained injury to her reputation, humiliation and embarrassment.

270.     Defendant's actions resulted in Plaintiff's loss of custody of her son.

271.     Defendant's actions resulted in Plaintiff's inability to appropriately respond to her federal complaint.

272.     Defendant's conduct was gross, willful and oppressive; as a result, Plaintiff claims punitive damages of Defendant.

273.     Plaintiff's actions constitute a due process violation and were committed on basis of retaliation for Plaintiff's having filed employment discrimination complaints with the EEOC, Commission and the USDC SDNY.

274.     Plaintiff claims attorney's fees and expenses of the Defendant pursuant to *42 U.S.C.S. § 1981, § 1985* and *§ 1988*.

275.     Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff demands judgment against defendants as follows:

    a.   Award Plaintiff injunctive, compensatory and punitive damages and the costs of this action;

    b.   Award to Plaintiff attorneys' fees; and

    c.   Award such other relief as the Court may deem just and proper.


## SIXTEENTH CLAIM FOR RELIEF

### DEFENDANTS: ALL DEFENDANTS

#### Violation Of *42 USCS § 1985*: *Conspiracy To Interfere With Civil Rights*

276.     Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 275 of this complaint.

277.     The aforementioned acts of retaliation, discrimination and harassment on basis of Plaintiff's status as a survivor of domestic violence and black, Sabbath-observer described fully above are in violation of Plaintiff's rights under the *First Amendment* and *42 USCS § 1985*.

278.     Defendants, by and through their employees, acting under color of state law as agents or co-conspirators of the City did conspire for the purpose of impending, hindering, obstructing, or defeating, Plaintiff the due course of justice with intent to deny her the equal protection of the laws and to injure her property.

279.     Plaintiff's speech regarding matters of public concern is protected under the *First Amendment* as speech by a public employee on matters of public concern.

280.     Acting under color of state law, Defendants conspired to continually harass Plaintiff as described fully above in retaliation for Plaintiff's engagement in the aforementioned protected activity, and took adverse actions or treated Plaintiff with disparity.

281.     As a result of defendants aforementioned conduct against Plaintiff, Plaintiff and family suffered both economic and non-economic damages including mental anguish, public ridicule, public stigmatization, defamation of character and emotional distress.

282. Plaintiff brings action under *42 USCS § 1985, § 1981* against conspiratorial deprivation, interference of her rights and failure to prevent such under *42 USCS § 1986.*

283. Defendants, while acting under color of state law acted as co-conspirators with Defendant, NYPD and City by interfering with her rights guaranteed by the *First, Fifth, Thirteenth* and *Fourteenth Amendments* to the *U.S.C.,* conspiring, "aiding and abetting," while following instruction or failing prevent these acts of discrimination and harassment.

284. Conspiratorial acts of defendants were committed in violation of *Exec. Law § 296 (6), Admin Code § 8 (6)* and *42 USCS § 1981, 1983* and *1985.*

### SEVENTEENTH CLAIM FOR RELIEF

#### DEFENDANTS: ALL DEFENDANTS

##### *Intentional Infliction of Emotional Distress*

285. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 284 of this complaint.

286. Defendants by the in/actions herein described, exhibited extreme and outrageous conduct towards Plaintiff.

287. In undertaking the aforementioned actions, Defendants intended to cause Plaintiff severe emotional and psychological distress.

288. The aforementioned conduct of Defendants has caused Plaintiff severe emotional distress and mental anguish.

289. As a proximate cause of Defendants' acts and omissions, Plaintiff has in the past and in the future suffer damages.

WHEREFORE, Plaintiff requests of Court:

(i) Advance this case on the docket, order a speedy trial at the earliest practicable date, and cause this case to be in every way expedited, especially considering Plaintiff's unemployed status.

(ii) Issue a permanent injunction enjoining each Defendant, its members, agents, successors, employees, attorneys, and those acting in concert with them and at their direction, from engaging in, continuing or maintaining the policy, practice, custom, and usage of denying abridging, withholding, limiting, said unlawful practices and from engaging in or continuing any and all other practices found by this Court to be in violation of either of the aforesaid statutes.

(iii)To declare that the practices complained of herein are unlawful in that they violate *U.S. Constitution, Title VII, 42 USCS § 1981, 1983, 1985 (1)* and *(3)*;

(iv)Issue a permanent injunction enjoining Defendants, its members, successors, employees, and those acting in concert with them or at their direction from operating its policy and practice of unlawful, sex- / race- / religiously-biased, discriminatory and retaliatory acts and the creation of a hostile environment so long as it constitutes an interference with Plaintiff's right of freedom to religious choice and practice;

(v) Issue permanent injunction enjoining Defendant City of NY its members, successors, employees, and those acting in concert with it and by its direction from continuing to refuse to allow Plaintiff the right to return to the position of Police Officer;

(vi) Grant Plaintiff a declaratory judgment declaring and adjudging that the discriminatory and conspiring acts of Defendants alleged in this complaint constitute violations of *Exec Code § 292 et seq., Admin Code § 8 et seq., Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, § 1983* and *§ 1985;*

(vii) Award Plaintiff back pay pursuant to *Title VII* and *Civil Rights Act of 1991,* for all lost wages and other damages that she suffered as a result of Defendant, NYPD's retaliatory unlawfully-motivated suspensions;

(viii) Award Plaintiff injunctive relief, compensatory and punitive damages for Defendants' willful and intentional continuation of its discriminatory and biased practices directed against her pursuant to *42 USCS § 2000e-2, § 1981, § 1982* and  *§ 1983* as Plaintiff sues each Defendant in both their individual and official capacities pursuant to *Title VII,  Civil Rights Act of 1991, 42 USCS § 1981, § 1983* and *§ 1985;* as applies;

(ix) Recovery against Defendants reasonable attorney's fees for the service of any attorney who may represent Plaintiff in the proceedings and for any assistance in investigation by professional witnesses as provided for in *NYC Admin. Code § 8-502(l)* and for any attorneys fee allowed to *Pro Se* litigants under *42 USCS § 1988* and *§ 1981* and all other relief that is equitable.

(x) Back pay (plus interest), injunctive and declaratory relief, as well as costs and attorneys'/ expert fees pursuant *42 USCS § 2000e-5(g) & (k)* and *42 USCS § 2000e-2 (m).*

(xi) Plaintiff requests an order directing DHMH, KCH and CIH to seal the hospital records arising out of her involuntary, unnecessary and unlawful commitment and confinement pursuant to Section 33.14 of Mental Hygiene Law.

(xii) That this case be tried by a jury.

Respectfully submitted,

11/18/2011

Lou-Ann Elias

Plaintiff *Pro Se*
436 Herkimer St.
Brooklyn, N.Y. 11213

[i] CONG. Globe, 39™ CONG., 1* Sess. 1833 (1866) (remarks by Representative Lawrence).

[ii] **The Mobbing Encyclopedia: "Bullying"**

Psychological terror or mobbing in working life involves hostile and unethical communication which is directed in a systematic manner by one or more individuals, mainly toward one individual, who, due to mobbing, is pushed into a helpless and defenseless position and held there by means of continuing <u>mobbing activities</u>. These actions occur on a very frequent basis (statistical definition: at least once a week) and over a long period of time (statistical definition: at least six months' duration). Because of the high frequency and long duration of hostile behavior, this maltreatment results in considerable mental, psychosomatic and social misery.

[iii] Based on Biblical beliefs found in

Exodus 20:8

Remember the sabbath day, to keep it holy. [9] Six days shalt thou labour, and do all thy work: [10] But the seventh day [is] the sabbath of the LORD thy God: [in it] thou shalt not do any work, thou, nor thy son, nor thy daughter, thy manservant, nor thy maidservant, nor thy cattle, nor thy stranger that [is] within thy gates: [11] For [in] six days the LORD made heaven and earth, the sea, and all that in them [is], and rested the seventh day: wherefore the LORD blessed the sabbath day, and hallowed it.

[iv] Plaintiff made motion for this complaint to be withdrawn on April 11th, 2008

[v] Verification of first name pending

[vi] Verification of first name pending

[vii] *Fuller v. City of Oakland*, 47 F. 3d 1522 (9* Cir 1995); *Rhode v Steel Casings, Inc.*, 649 F. 2d 317 (5* Cir. 1981)

[viii] The Occupational Safety and Health Act (OSHA) of 1970, in its "general duty" clause, provides that employers have a responsibility to provide a safe and healthy workplace free from hazards likely to cause harm or death. 29 USC §651 (1988 & Supp. V 1993). Pursuant to that clause, employers may have a statutory duty to protect their employees from domestic violence in the workplace and may be held civilly and criminally liable. Kinczkowski, Speelman, Olijnyk, Id.

[ix] Currently:

Inspector Jeffrey B. Maddrey
1000 Sutter Avenue, Brooklyn, NY, 11208
(718) 827-3511

ORIGINAL          *Lou-Ann Elias*

436 Herkimer St
Brooklyn. N.Y. 11213

November 18ᵗʰ. 2011

Re: Complaint of (I) On-going harassment, pervasive departmental misconduct, discrimination in the terms
and conditions of employment and the City of NY / NYPD
(II) "Failure to hire" by City of NY / NYPD / DCAS motivated by:

      (i)    Sex / Domestic-violence survivor status
      (ii)   Race
      (iii)  Religion
      (iv)  Retaliation

Petitioner:

1.  Lou-Ann Elias
    436 Herkimer St
    Brooklyn. N.Y. 11213

Respondents:

1.  City of New York
2.  Unknown Employees
3.  Mayor Michael Bloomberg (individually and in capacity of Mayor of NYC)
    Address: City Hall, New York, NY 10007
    Phone #: 311

4.  Police Department City of New York (NYPD)
5.  Members of the Board of Trustees Police Pension Fund of the City of New York
6.  Police Commissioner Raymond Kelly
    (individually and in capacity of):
    i.    Police Commissioner of the City of New York
    ii.   Chair of the Board of Trustees Police Pension Fund of the City of New York
    Address: 1 Police Plaza, New York, N.Y. 10038
    Phone #: (646) 610 6835

7.  Deputy Inspector Jeffrey B. Maddrey
    (individually and in capacity of Commanding Officer of 73rd Pct.)
8.  Lt. Caesar (individually and in capacity of Platoon Commander at 73ʳᵈ Pct.)
9.  Lt. Magoolahan (individually and in capacity of Platoon Commander at 73ʳᵈ Pct.)

28. Kings County Hospital Center
29. Defendant Psychiatrist Marla Shapiro
30. Unknown Employees
    451 Clarkson Avenue
    Brooklyn, NY 11203-2097

31. Social Security Administration
32. Unknown Psychiatrist
    Office of Central Operations
    1500 Woodlawn Drive
    Baltimore, Maryland 21241-1500

---

* Current info:

    Inspector Jeffrey B. Maddrey
    1000 Sutter Avenue, Brooklyn, NY, 11208
    (718) 827-3511

ᴵᴵ Verification of first name pending

ᴵᴵᴵ Verification of first name pending